### AKTIESELSKABET BANAN v. HOADLEY et al.

(Circuit Court of Appeals, Second Circuit. February 27, 1894.)

#### No. 67.

CHARTER-PARTY—SUBCHARTER—EVIDENCE.

The owner of the steamship Banan claimed that, when her charterer had become unable to fulfill the terms of the charter, respondents entered personally into a verbal charter of the ship from month to month, in substitution of the original charter. The respondents asserted that they had subchartered the vessel from the original charterer for one month only, for which time they had used her, and the hire for which they had paid, and that their connection with the ship had thereupon ceased. The shipowner presented a bill for charter money for the succeeding month, which remained unpaid, and on which this suit was founded. *Held*, on the evidence, that the verbal charter alleged by the ship had not been proved, and that the libel should be dismissed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by the Aktieselskabet Banan against Russell H. Hoadley and others to recover charter money under a charter of the steamship Banan. The district court dismissed the libel, and the libelant appeals.

In the court below, Brown, District Judge, delivered the following opinion:

The libelant contends that when the Honduras Company became unable, after two months, to continue to fulfill the terms of its charter of the steamship Banan, by paying the monthly hire in advance, the respondents agreed to take the vessel by a substitution of themselves in place of the charterers, except that the hire should continue from month to month only, with a further agreement to give Mr. Holmes, the owners' agent here, a reasonable notice before stopping the hire; i. e. about a week, as Mr. Holmes states his understanding to have been. The respondents deny any such contract. The defendant Monroe, though admitting much of the alleged conversation with Mr. Holmes, testified that he made no agreement to hire the vessel at all from Mr. Holmes, that he refused to take any charter from him, but that he proposed only to take a subcharter from the Honduras Company. This accords precisely with what was actually done, and Mr. Bowron confirms Mr. Monroe in his statement that he refused to sign any charter from Mr. Holmes; and Mr. Spitzer says, in one passage of his testimony, that Mr. Monroe did speak of a subcharter.

The evidence leaves no doubt that the respondents, on the next day, March 11th, by their house in New Orleans, where the ship then was, took from the Honduras Company a subcharter for one month; and on notice thereof, by telegraph from New Orleans, Mr. Monroe, on the following day, March 12th, paid to Mr. Holmes the hire of the ship for one month from March 11th. The receipt of the bill for that month's payment was signed by Mr. Holmes in

person, and that bill described the charge as for the "third month's hire of SS. Banan from March 11." The bill rendered to Mr. Monroe on April 11th,—the one in suit,—in like manner described that charge as for the "fourth month's hire of SS. Banan to the Sr. Honduras Trading Co. (April 11—May 11)." Had these two bills been regarded at the time as accruing upon an independent letting of the vessel by Mr. Holmes to the respondents, the bills could not properly have so described the hire as they did, and they would not naturally have been so drawn; and there was no discharge or release of the original charterers, nor any intent to discharge them. There is an entire absence, also, of any written evidence, or any memoranda, to sustain Mr. Holmes' version, such as might naturally have been expected in so important a negotiation, if there was, as he states, any new letting of the vessel from him to Mr. Monroe for Hoadley & Co. On the contrary, the written memoranda made by both parties, viz. the bills rendered by Mr. Holmes here, and the subcharter from the Honduras Company, in New Orleans, precisely confirm Mr. Monroe's version,' and are incompatible with the libelant's contention

By the subcharter, Mr. Holmes lost nothing, but made at least one month's additional hire, and had the possibility of renewals of the subcharter from the Honduras Company. The payment and receipt for both March and April were made expressly "for the 3d month's" and "for the 4th month's hire." This shows a payment and an acceptance on account of the original charter, as Mr. Monroe testifies, and not upon any new bargain. Mr. Monroe denies positively that he made any promise as to a renewal; but, if anything was said, it was no part of any bargain with Mr. Holmes, and was a matter of courtesy only. It was without consideration, and not of any legal obligation. It was not material to anything done, as between Mr. Holmes and Mr. Monroe. Mr. Holmes parted with nothing on the faith of it. The libelants, on the 11th of April, were in no worse condition for want of prior notice than on the 11th of March, when the original charterers became unable to continue the charter. The charter did not require any prior notice of discontinuance, and, as I have said, was not released. The confirmation of the respondents' version by all the contemporary written memoranda, and the absence of any writing showing any such terms as the respondents allege, satisfy me that there was no substitution or new bargain made. The City of Alexandria, 40 Fed. 697, 701; Wheelwright v. Walsh, 42 Fed. 862. The libel must therefore be dismissed, with costs.

George Bethune Adams, for appellant.

George Walton Green, for appellees.

Before LACOMBE and SHIPMAN, Circuit Judges.

PER CURIAM. We are not inclined to give as much weight to the various items of documentary evidence as did the learned district judge. Upon the oral testimony · of the witnesses, however, who were all examined before him, there was such conflict on the single issue of fact involved in the case that his decision thereon should not be reversed, in the absence of any new proof or of manifest error, neither of which is shown here. Decree affirmed, with interest and costs.